UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

For Online Publication Only

--------------------------------------------------------------------X

UNITED STATES OF AMERICA

    --against--

        **MEMORANDUM & ORDER**

TIBOR KLEIN and
ROBERT SCHULMAN,
        16–cr–442 (JMA)

          Defendants.

--------------------------------------------------------------------X

**AZRACK, United States District Judge:**

Before the Court are (1) the government's motion to preclude the admission of any testimony or evidence concerning the charging decision of the United States Securities and Exchange Commission ("SEC") in a parallel civil case; (2) the government's notice of its intent to introduce certain evidence of the defendants' relationship with one another; (3) defendant Robert Schulman's motion to preclude the government from pursuing a "gift" theory of insider trading liability; and (4) Schulman's motion to have the Court supervise the government's compliance with its disclosure obligations pursuant to United States v. Brady and Model Rule of Professional Conduct 3.8. These motions were fully briefed as of January 24, 2017, and the Court heard oral argument on all motions on January 26, 2017.

For the reasons set out below, the Court: (1) grants the government's motion to preclude the admission of any evidence concerning the SEC's charging decision; (2) grants the government's request to introduce evidence concerning the relationship between the defendants, with the condition that such evidence include no mention of the SEC's charging decision; (3) denies Schulman's motion to preclude a "gift" theory at trial; and (4) denies Schulman's motion for the Court to supervise the disclosure of Brady and Rule 3.8 materials.

# I. BACKGROUND

The grand jury indicted defendants Tibor Klein and Robert Schulman on August 4, 2016. The indictment charges both defendants with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371 and with securities fraud in violation of 15 U.S.C. §§ 78(b) and 78ff. In relevant part, the indictment alleges:

- That Schulman is an attorney who represented King Pharmaceuticals, Inc. ("King");

- That, in August 2010, Schulman obtained material, non-public information concerning the acquisition of King by Pfizer, Inc. ("Pfizer");

- That Schulman provided that information to Klein, his friend and investment advisor; and

- That Klein traded on that information and realized a profit both for himself and for his clients, including Schulman.

The indictment further alleges that Klein provided the material, non-public information to Michael Shechtman—an unindicted co-conspirator who has cooperated with the government's investigation—and that Shechtman also traded on the information.

Beginning in approximately 2011, the SEC began investigating Klein and Shechtman's trading activities. On September 19, 2013, the SEC filed a civil complaint in the Southern District of Florida naming Klein and Shechtman as defendants, alleging that Klein and Shechtman traded on material, non-public information that they had "misappropriated" from Schulman. The SEC complaint does not name Schulman as a defendant. Shechtman has entered into a settlement agreement with the SEC resolving the claims against him. The SEC civil action against Klein is stayed pending the outcome of this criminal matter.

## II.    DISCUSSION

### A.    The Government's Motion to Preclude Reference to the SEC Complaint and Charging Decision

The government has moved to preclude defendants from making reference to the SEC complaint and charging decision in the parallel civil action, arguing that the complaint and charging decision are inadmissible hearsay.  (Gov't Mem. at 2–4, ECF No. 36; Gov't Reply at 3–21, ECF No. 47.)  The government further argues that, even if the SEC's complaint and charging decision qualified for an exception to or exclusion from the hearsay rules, they are inadmissible either under Rule 401 because they are not relevant, or under Rule 403 because their probative value is significantly outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[1] (Gov't Reply at 15–18.)

Defendant Schulman opposes the government's motion.  As an initial matter, Schulman correctly argues that there is no rule that "contradictory charging decisions are per se inadmissible."  (Schulman SEC Opp. at 2, ECF No. 36.)  In support of this position, Schulman relies on United States v. White, 692 F.3d 235 (2d Cir. 2012).  White makes clear that there is no per se rule excluding evidence of prior prosecutorial charging decisions and that, when such evidence is proffered, courts are required to engage in a thorough analysis of the relative probative and prejudicial value of the evidence.  Schulman assumes that White goes further, however, and stands for the proposition that there is no per se rule excluding either charging decisions by the SEC or the SEC's complaint in a parallel civil suit.[2]  Even if this assumption is

---

[1] Throughout this Order, the Court refers to the Federal Rules of Evidence simply as the "Rules."

[2] The Court need not determine whether White extends this far because, as discussed below, the SEC complaint and charging decision in this case are inadmissible hearsay and present a danger of prejudice and confusion that

3

correct, the SEC complaint and charging decision here are admissible only if they are relevant, fall under one of the exceptions to or exclusions from the hearsay rule, and have probative value that is not substantially outweighed by the danger of prejudice and confusion.

Schulman argues that the SEC complaint and charging decision are "central to [Schulman's] claim of innocence" and, therefore, are relevant under Rule 401. (Schulman SEC Opp. at 10.) He further argues that the SEC complaint and charging decision are admissible either (1) as public records under Rule 803(8); (2) as statements of a party-opponent under Rule 801(d)(2)(B); or (3) under the residual hearsay exception laid out in Rule 807. (Id. at 2–11.) Schulman argues that the probative value of the proffered evidence is not substantially outweighed by any of the factors listed in Rule 403. (Id. at 11.)

The Court assumes, for the purpose of deciding the instant motion, that the SEC complaint and charging decision satisfy the liberal relevance standard established by Rule 401. Even on that assumption, however, the SEC complaint and charging decision constitute inadmissible hearsay. Further, the complaint and charging decision have limited probative value that is substantially outweighed by the danger of unfair prejudice and confusion presented by their admission. The SEC complaint and charging decision are thus inadmissible.

**1.      The SEC Charging Decision is Inadmissible under Rule 803(8)**

Schulman argues that the SEC's complaint and charging decision are admissible as an exception to the hearsay rule under Rule 803(8)(A)(iii), which allows the admission of a "record or statement of a public office" for use against the government in a criminal case if the statement sets out "factual findings from a legally authorized investigation." If the proponent of the admission of a piece of evidence demonstrates that it qualifies for admission under

---

substantially outweighs their probative value.

Rule 803(8)(A)(iii), the evidence may still be excluded if its opponent shows, pursuant to Rule 803(8)(B), "that the source of information or other circumstances indicate a lack of trustworthiness."

The Supreme Court has held that a public record containing "factually based conclusions or opinions" may be admissible under Rule 803(8) based, among other things, on recognition "that 'factual findings' includes conclusions or opinions that flow from a factual investigation." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 162–163 (1988). The Court is unaware, however, of any convincing authority in support of the proposition that "factual findings" encompass an agency's allegations or charging decision in a parallel civil case.

Schulman has cited no Second Circuit case in support of his position. Instead, he relies on United States v. Gluk, a recent Fifth Circuit case allowing the admission of an SEC complaint as evidence in a criminal prosecution of the CEO and COO of a medical device company that had engaged in fraud. 831 F.3d 608 (5th Cir. 2016). As explained below, the Court does not find Gluk to be persuasive and declines to follow it.

In Gluk, the SEC had conducted an investigation of the medical device company and filed a civil suit against different employees. The SEC complaint in the civil suit affirmatively stated that the SEC did "'not allege that [the CEO and COO] participated in the wrongful conduct' but instead determined that [other employees] 'intentionally withheld' information from" the CEO and COO. Id. at 610–612. Nevertheless, the government brought criminal charges against the CEO and COO, who then attempted to introduce the SEC complaint and two factual SEC memoranda into evidence. Id. The trial court excluded all three documents "as more prejudicial than probative." Id.

On appeal, the Fifth Circuit reversed the district court, finding that all three documents constituted "factual findings" and, therefore, were admissible under Rule 803(8). Id. at 614–615. In so finding, the Fifth Circuit focused largely on the factual memoranda—rather than the SEC complaint—and considered whether those memoranda had been "accepted" by the Commission. Id. at 614. After determining that the factual findings in the memoranda had been accepted by the Commission, the court devoted only a short paragraph to the SEC complaint, noting that it "unambiguously represents an official action of the SEC" and stating, without citation to any authority, that "[w]hen an agency professional transmits a document to others outside the agency, that document is presumptively a factual finding of the agency." Id. The court then found that the statements in the SEC complaint had "the same probative value as the similar statements" in the two factual memoranda. Having already found that the memoranda were admissible, the court summarily found the statements in the complaint to be admissible. Id.

In doing so, the Gluk court appears to have glossed over the very real distinctions between factual findings and allegations and engaged in no real inquiry into whether the statements at issue constituted factual findings. And, even assuming that the Gluk court appropriately applied Rule 803(8), it appears not to have engaged in any analysis of the probative value of the complaint when compared to the danger of prejudice or confusion, as required by Rule 403. Even taken at face value, however, Gluk supports the admissibility only of the assumed "factual findings" in the complaint; it does not go so far as to hold that the SEC's charging decision was, itself, admissible.

Beyond Gluk, Schulman cites no authority that directly supports the admissibility of an SEC complaint under Rule 803(8). Instead, he relies on a handful of distinguishable cases. For instance, Schulman cites United State v. Peitz for the proposition that an SEC Action

Memorandum—which is a formal communication from staff of the Enforcement Division to the Commissioners—is admissible under Rule 803(8) where the report was "based on a thorough investigation" by the SEC. (Schulman Sur-Reply at 4, ECF No. 51 (quoting United State v. Peitz, No. 01-cr-852, 2002 WL 31101681, at *5 (N.D. Ill. Sept. 20, 2002)).) In Peitz, the court allowed the admission of an Action Memorandum that concluded that there was "no evidence that [the defendant] knowingly participated in, or was aware of, the scheme to defraud investors." Peitz, 2002 WL 31101681, at *5. Schulman appears to argue that, because an Action Memorandum is "drafted before the SEC file[s] a civil action," the admissibility of the Action Memorandum in Peitz supports the admissibility of the SEC complaint and charging decision here. (Schulman Sur-Reply at 4 (emphasis in original).) The relevant inquiry under Rule 803(8), however, is whether the proffered evidence contains "factual findings from a legally authorized investigation." The fact that an Action Memorandum may be admissible under Rule 803(8) where it contains relevant factual findings does not support the conclusion that the allegations in a subsequent civil complaint constitute factual findings.[3]

Schulman again glosses over the distinction between factual findings and allegations in his discussion of SEC v. Pentagon Capital Mgmt. PLC, No. 08-cv-3324, 2010 WL 985205 (S.D.N.Y. Mar. 17, 2010). In Pentagon Capital—a civil suit by the SEC—the court allowed the admission of SEC Orders Instituting Proceedings ("OIPs") under Rule 803(8) because the OIPs contained factual findings that contradicted the allegations in a subsequent SEC complaint. Id. The court found that the OIPs "ma[de] findings based on facts discovered pursuant to [the SEC's] investigative authority." Id. at *5. That is, the Pentagon Capital court recognized that the OIPs were admissible under Rule 803(8) because they contained the SEC's "factual

_____

[3] The Court need not determine the admissibility any SEC Action Memorandum in the instant case because no such document is before the Court.

findings." This does *not* support the proposition that the allegations in a civil complaint constitute such findings and, therefore, does not support Schulman's argument.

Schulman also cites a line of Second Circuit cases standing for the proposition "that the findings of an administrative agency [such as the EEOC] resulting from an investigation made pursuant to authority granted by law are generally admissible under the 'public records' exception to the hearsay rule." (Schulman SEC Opp. at 5 (quoting <u>Brabham v. St. Luke's Home Residential</u>, 2016 U.S. Dist. LEXIS 80968 *16 n.3, 2016 WL 3512222 (N.D.N.Y June 22, 2016)).) Again, Schulman fails to appreciate the difference between the "findings of an administrative agency" and the allegations contained in a civil complaint. Indeed, the fact that an agency's findings may qualify as "factual findings" under Rule 803(8) is unsurprising in light of the holding of <u>Beech Aircraft</u>.

Beyond the unpersuasive reasoning of <u>Gluk</u>, there is simply no support for Schulman's position. The SEC complaint and charging decision are distinct from Action Memoranda, OIPs, EEOC reports, and other reports that contain factual findings. Because the SEC complaint and charging decision do not contain such findings, they are inadmissible under Rule 803(8).

After engaging with Schulman's legal arguments, the government devotes a substantial portion of its reply brief to arguments concerning the trustworthiness of the SEC complaint. (Gov't Reply at 12–18.) Since the "trustworthiness" inquiry under Rule 803(8)(B) is relevant only where the criteria of Rule 803(8)(A) are satisfied, and since those criteria are not satisfied here, the Court need not determine whether the SEC complaint and charging decision are trustworthy.

## 2. The SEC Charging Decision is Inadmissible under Rule 801(d)(2)

Schulman next argues that the SEC's complaint and charging decision are admissible under Rule 801(d)(2)(B) as a statement of a party-opponent that the opposing party "manifested that it adopted or believed to be true." Schulman argues that the SEC and United States Attorney's Office for the Eastern District of New York "should be treated as the same 'party'" such that the SEC complaint should be treated as a statement made by the government here.[4] (Schulman SEC Opp. at 7.)

### a. Statements by the SEC Cannot be Admitted as Statements by the Government

In order to find that the SEC complaint and charging decision were admissible under Rule 801(d)(2)(B), the Court would first need to find that two separate criteria are satisfied. First, the Court must find that the SEC and DOJ are, or should be treated as, the same party. Second, the Court must find that the DOJ has "manifested that it adopted or believed [the SEC complaint] to be true." Neither criterion is satisfied here.

With respect to the first requirement, courts in this Circuit have held that the SEC and DOJ cannot be regarded as the "same party" for purposes of Rule 804(b) where they did not cooperate or collaborate in the relevant investigation. See, e.g., United States v. Martoma, No. 12-cr-973, 2014 U.S. Dist. LEXIS 152926, *14-15, 19-20 (S.D.N.Y. Jan. 8, 2014) (citing United States v. Whitman, No. 12-cr-125 (S.D.N.Y. 2012) (ECF No. 110 at 2305-07)).

Although Rule 804(b) is distinct from Rule 801(d), the Court agrees with the above-cited courts' analysis concerning the necessary conditions for treating the SEC and DOJ as the "same party." As such, the Court finds that *some* level of cooperation or collaboration between the

---

[4] Because the United States Attorney's Office for the Eastern District of New York is part of the Department of Justice ("DOJ"), the Court refers to it as the DOJ for the purposes of determining whether it and the SEC—another executive agency—should be treated as the "same party" for purposes of Rule 801(d)(2)(B).

agencies in the course of their respective investigations is the bare minimum requirement for such treatment. Here, there is no indication whatsoever that the SEC or DOJ collaborated with respect to their investigations into Klein's trading activities. The SEC investigation was based in Florida, while the DOJ investigation was based out of the Eastern District of New York and, in fact, the DOJ investigation appears not to have commenced until after the SEC investigation had ended. Once the DOJ's investigation commenced, the DOJ conducted an independent investigation that included the re-interview of relevant witnesses. The DOJ does not appear to have relied on the SEC's investigatory work and, indeed, the DOJ appears to have uncovered additional evidence in the form of Shechtman's testimony and cooperation. Thus, the DOJ and SEC should not be treated as the same party.

With respect to the second requirement, all parties agree that the DOJ has *not* "adopted or believed [the SEC complaint] to be true." (See, e.g., Schulman SEC Opp. at 2 (arguing that the government and SEC have advanced "two contradictory theories"); Klein Mem. at 2 ("The theories of liability alleged in both the pending indictment and the SEC case are substantially different and constitute mutually exclusive, contradictory theories of insider trading."); Gov't Reply at 20 (noting that the government's charging decision "demonstrates that the government explicitly refused to adopt the SEC Complaint and its theory of the case as part of this prosecution").) Indeed, this is the very reason that Schulman seeks to introduce the complaint into evidence: the DOJ has advanced a theory that is distinct from the theory advanced by the SEC, and Schulman wants the jury to be aware of this discrepancy.

Because the DOJ and SEC conducted separate investigations, and because there is no indication that the DOJ has manifested any belief in the truth either of the allegations contained

in the SEC complaint or of the SEC's charging decision, the SEC complaint and charging decision are not admissible under Rule 801(d)(2)(B).

### b. Schulman's Cited Cases are Distinguishable or Inapposite

In support of his argument to the contrary, Schulman cites a handful of out-of-circuit cases purportedly standing for the proposition that "statements of a federal agency (or its employees) *other than the Department of Justice* may be admitted against the government in a criminal prosecution." (Schulman's SEC Opp. at 7–8 (emphasis in original) (citing United States v. Sklena, 692 F.3d 725 (7th Cir. 2012); United States v. Barile, 286 F.3d 749 (4th Cir. 2002); United States v. Van Griffin, 874 F.2d 634 (9th Cir. 1989); United States v. Kattar, 840 F.2d 118, 130-31 (1st Cir. 1988)); see also id. at n.6 (citing United States v. Warren, 42 F.3d 647, 655-56 (D.C. Cir. 1994)).) None of these cases concern the relationship between the SEC and DOJ and, indeed, none of these cases support a finding that the two agencies should be treated as the same party here. This conclusion is clear upon an examination of the cited cases.

First, the court in Kattar held only that the Justice Department *itself* should be considered a party-opponent in criminal cases; it explicitly declines to determine "[w]hether or not the federal government in all its capacities should be deemed a party-opponent in criminal cases." Kattar, 840 F.2d at 130 (citing United States v. Morgan, 581 F.2d 933, 937 n.10 (D.C. Cir. 1978)). Thus, Kattar offers Schulman no support.

Second, the Warren court held only that out-of-court statements by a federal police officer in the District of Columbia are admissible under Rule 801(d)(2)(B) where the DOJ "ha[d] indicated in a sworn affidavit to a judicial officer that it believes [those] particular statements are trustworthy." Warren, 42 F.3d at 655 (quoting Morgan, 581 F.2d at 938). Warren thus stands only for the proposition that, where the government has incontrovertibly manifested that it

believes a statement by one of its officers to be true, that statement is admissible under Rule 801(d)(2)(B).  This proposition does not support Schulman's position here.

Third, <u>Sklena</u> holds that the Commodity Futures Trading Commission ("CFTC") qualifies as the "same party" as the DOJ for the purpose of Rule 804(b)(1) specifically because the CFTC "is required by statute to report on its litigation activities directly to the Justice Department" and because of the "interdependence" of the two agencies.  <u>Sklena</u>, 692 F.3d at 731.  In contrast, the SEC and DOJ are independent executive agencies and there is no indication whatsoever that they coordinated their investigations here.

And, finally, although <u>Barile</u> and <u>Van Griffin</u> allow the admission of statements made by a non-DOJ government employee or agency under Rule 801(d)(2), both cases are distinguishable and, in any event, both engage in only a summary analysis of the applicability of Rule 801(d).

The defendant in <u>Barile</u> was indicted for fraud arising out of materially false statements that he had allegedly made to the FDA.  <u>Barile</u>, 286 F.3d at 758.  The issue of materiality turned, in large part, on whether the FDA would have considered the false statements to be material when reviewing them.  <u>Id.</u>  The government called an FDA employee as a trial witness to testify that the false statements were material, and the defendant then sought to admit a document that included statements from that same witness contradicting her testimony.  <u>Id.</u>  The trial court excluded the prior statement but, on appeal, the Fourth Circuit found that they were properly admissible.  <u>Id.</u>

It is unclear whether the trial court in <u>Barile</u> even considered the admissibility of the out-of-court statements under Rule 801(d)(2).  Rather, the trial court appears to have excluded the out-of-court statement after finding that it did not constitute an inconsistent statement and, therefore, did not satisfy the requirements of Rule 613(b).  <u>Barile</u>, 286 F.3d at 755.  On appeal,

the Fourth Circuit found that the out-of-court statement was inconsistent and so was admissible under Rule 613(b).  The Fourth Circuit also found, with little discussion, that the statement should have been admitted under Rule 801(d)(2).  Thus, the <u>Barile</u> court considered the admissibility of an out-of-court statement primarily for the purpose of impeaching a trial witness; the court's comments concerning Rule 801(d)(2) appear to be dicta and, in any event, concern a situation that is entirely distinct from the one before the Court here.

The defendant in <u>Van Griffin</u> was indicted for driving under the influence in a national park after failing several sobriety tests administered by a park ranger.  874 F.2d at 635–36.  At trial, the defendant sought to admit a publication by the National Highways Traffic Safety Administration ("NHTSA") detailing the proper way to administer one of the tests in order to demonstrate that the park ranger had administered the test incorrectly.  <u>Id.</u>  The trial court precluded admission of the NHTSA manual but, on appeal, the Ninth Circuit held that the manual should have been introduced as a party admission under Rule 801(d)(2)(D)—rather than Rule 801(d)(2)(B), which is at issue here—because NHTSA was the government body "charged with the development of rules for highway safety" and, thus, "its pamphlet on sobriety testing was an admissible party admission."  <u>Id.</u> at 638.  The panel also noted that it did "not say that every publication of every branch of government of the United States can be treated as a party admission."  <u>Id.</u>  Thus, <u>Van Griffin</u> is not only factually distinguishable, it also concerns the application of a separate sub-section of the Rules.  For that reason, it does not support Schulman's position.

For the above reasons, none of the cases cited by Schulman alter the Court's conclusion that the SEC complaint and charging decision are inadmissible under Rule 801(d)(2).

### 3. The SEC Charging Decision is Inadmissible under Rule 807

Schulman's final argument for the admissibility of the SEC complaint and charging decision is under Rule 807's residual hearsay exception. Under that rule, hearsay may be admissible even if it does not satisfy the requirements of any other exception if (1) the proferred evidence has "circumstantial guarantees of trustworthiness" equivalent to those set out under the rules establishing the other hearsay exceptions, (2) it is "offered as evidence of a material fact," (3) it is "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts," and (4) "admitting it will serve the purposes of [the rules of evidence] and the interests of justice."

Schulman first argues that the SEC complaint and charging decision are "undoubtedly trustworthy" because they were "adopted as true by the Commission after an investigation by attorneys and staff." (Schulman SEC. Opp. at 9.) Second, he argues that he intends to offer the SEC complaint as evidence "that, based on the facts adopted as true in the complaint, the agency primarily responsible for interpreting and enforcing the securities laws concluded that Klein misappropriated [material, non-public information ("MNPI")] from Schulman." (<u>Id.</u>) Third, Schulman argues that he "cannot obtain the equivalent" evidence by "calling individual SEC employees as witnesses" because the significance of the SEC complaint is that it is "a statement adopted as true by the Commission." (<u>Id.</u>) Finally, Schulman relies on <u>White</u> for the proposition that "there is a constitutional dimension to the admissibility of inconsistent charging decisions that are 'central to the defendant's claim of innocence'" and, therefore, admission of the evidence would serve the interests of justice. (<u>Id.</u> at 2, 10.)

In response, the government argues that the SEC complaint and charging decision should not be admitted under the residual exception because they satisfy none of the relevant criteria.

14

First, the government argues that the SEC complaint lacks the required "circumstantial guarantees of trustworthiness" both because it consists of allegations prepared solely for the purpose of litigation and because those allegations are drawn, in large part, from Schulman's own testimony to the SEC. (Gov't Reply at 21.) Second, the government argues that the SEC's allegations and charging decision have "little if any relevance to Schulman's intent in this case." (<u>Id.</u>) Third, the government argues that the SEC complaint and charging decision are "not 'more probative on the point of intent' than the evidence already available to Schulman at trial, including his own testimony." (<u>Id.</u>) And, finally, the government argues that admission of the complaint would be highly prejudicial. (<u>Id.</u>)

For the reasons discussed at length in Section II.A.4, below, the Court finds that the SEC complaint and charging decision have extremely limited probative value with respect to any material fact. Further, the admission of the SEC complaint and charging decision invite a danger of unfair prejudice and confusion that substantially outweigh any probative value. As such, the introduction of the proffered evidence would serve neither the interests of justice nor the purposes of the Federal Rules of Evidence. Thus, the proffered evidence fails to satisfy the third and fourth requirements of Rule 807 and is inadmissible.

### 4. The SEC Charging Decision is Inadmissible under Rules 401 and 403

The government argues that, even were the Court to find the SEC complaint and charging decision admissible under an exception to or exclusion from the hearsay rules, they should still be excluded under either Rule 401 or Rule 403. Rule 401 establishes the standard for relevance and states that evidence is "relevant if it has any tendency to make a fact more or less probable than it would be without evidence and the fact is of consequence in determining the action."

This is a liberal standard and, for the purposes of the instant motion, the Court assumes it is satisfied.

Rule 403 allows the court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." In determining whether evidence is admissible under Rule 403, district courts are required to "make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value." United States v. Al-Moayad, 545 F.3d 139, 160 (2d Cir. 2008).

Because the Court finds that the SEC complaint and charging decision are inadmissible hearsay, it need not engage in a Rule 403 analysis. Even assuming that the SEC complaint falls under an exclusion from or exception to the hearsay rule, however, the Court finds that the SEC complaint and charging decision present a danger of unfair prejudice and confusion that substantially outweigh their probative value and, as such, are inadmissible under Rule 403.

The government rightly argues that the only purpose to be served by the admission of the SEC complaint and charging decision "would be to suggest to the jury that it should reach the same conclusion that the SEC reached" and would "shift[] the jury's focus away from whether the government has proven [the] defendant's guilt beyond a reasonable doubt." (Gov't Mem. at 4. (citing United States v. Aleynikov, 785 F. Supp. 2d 46, 74–75 (S.D.N.Y. 2011).)

In opposition, Schulman argues that there "is nothing confusing about the SEC complaint" and states that "the defense merely wants to put the SEC complaint in evidence before the jury, question witnesses about its allegations of fact and inconsistent theory of liability, and argue to the jury about its relevance." (Schulman Mem. at 11.) He argues that the

fact that the SEC declined to charge Schulman "overwhelmingly point[s] to the probative value of the SEC complaint" with respect to Schulman's intent because the SEC has the power "to compel documents and testimony" and has a "much lighter evidentiary burden" than the DOJ. (Id.)

As an initial matter, the Court finds that the SEC complaint and charging decision have extremely limited probative value with respect to Schulman. As discussed above, the Court does not believe that the SEC complaint contains any factual statements at all; instead, it contains only allegations. Even assuming that the SEC complaint consisted of factual statements, however, it is far from clear that those statements are probative in the manner suggested by Schulman.

Schulman relies primarily the portion of the SEC complaint alleging that "Klein misappropriated the information from Schulman," arguing that this is probative of the issue of Schulman's intent. (SEC Compl. ¶ 2, ECF No. 47-1.)

When viewed in the light most favorable to Schulman, it is perhaps fair to conclude—as Schulman has—that the SEC's decision not to name Schulman as a defendant tends to indicate that, based on the evidence available at the time that the SEC complaint was filed, the SEC "concluded that the evidence was not sufficient to establish that Schulman acted with the intent that Klein trade." (Schulman SEC Opp. at 12.) Thus, the Court accepts Schulman's contention that this is the probative value of the SEC complaint and charging decision.

This probative value is diminished from the outset by the fact that Shechtman, a defendant in the civil action, is now cooperating with the government. Although the Court is unaware of the precise content of Shechtman's expected testimony, the government's charging decision relied on a body of evidence that is likely to be substantially different from that available to the SEC. Thus, to the extent that Schulman intends to argue that the SEC concluded

that a *different* body of evidence "was not sufficient to establish that Schulman acted with the intent that Klein trade," that is not strongly probative of the conclusions to be drawn from the evidence before the jury. (Schulman SEC Opp. at 12.)

In light of the minimal probative value of the SEC complaint and charging decision, Schulman's proposal to put "the SEC complaint in evidence before the jury, question witnesses about its allegations of fact and inconsistent theory of liability, and argue to the jury about its relevance" carries a tremendous danger of prejudice and confusion. (<u>Id.</u> at 11.) In essence, Schulman proposes diverting the jury's attention away from the question whether the prosecution has satisfied its burden of proof and towards the question whether the SEC or DOJ "got it right." Posing such a question to the jury—even where that question is implied, as it likely would be here—invites a substantial danger of confusion. And, such a proposal invites an even increased danger of unfair prejudice and confusion here, since the DOJ and SEC made their decisions based on different bodies of evidence.

Schulman attempts to minimize this fundamental issue by proposing that the government "take a total of five – ten minutes of trial time . . . to ask its witnesses whether they had provided specific documents or aspects of their testimony to the SEC" and states that the government "could easily argue the significance of such additional evidence in comparison to the SEC's detailed complaint." (<u>Id.</u> at 14.) Schulman's proposal not only invites a "danger" of confusion—it virtually assures it. And, Schulman's proposal will almost certainly invite the risk that the jury merely accepts the SEC's charging decision as dispositive, regardless of the other evidence put before it. These dangers substantially outweigh the limited probative value of the proffered evidence.

At oral argument on January 26, 2017, Schulman's counsel stated that a Rule 403 analysis could not be performed because the government had not disclosed the contents of Shechtman's expected testimony. The Court finds that this is irrelevant because the minimal probative value of the SEC complaint and charging decision is substantially outweighed by the danger of unfair prejudice and confusion presented by their admission. This would likely be true even had Shechtman not cooperated with the government at all.[5]

Because the probative value of the SEC complaint is so slight, and because the proposed introduction of evidence concerning the SEC complaint and charging decision will result in "mini-trials" about whether the SEC or DOJ's decision was the right one and the difference between the two investigations, the danger of prejudice and confusion substantially outweighs the probative value of Schulman's proposed evidence. For that reason, it would be inadmissible under Rule 403 even if it fell within an exception to the hearsay rule.[6]

In sum: evidence concerning the SEC complaint or charging decision is inadmissible hearsay and, even if it did fall within an exception to or exclusion from the hearsay rule, it would present a danger of unfair prejudice and confusion that would substantially outweigh any probative value. As such, both the defendants and the government are precluded from introducing evidence of, or making reference to, the SEC complaint or charging decision.

**B.    Evidence of Defendants' Continued Relationship and Other Trading Activity is Admissible**

In its moving papers, the government gave notice of its intention to introduce "evidence of the continued relationship between the defendants after the time of the charged conspiracy"

---

[5] If he believes that the contents of Shechtman's statements alter this calculus, Schulman may of course renew his request to admit the SEC complaint once those statements are disclosed.

[6] Although the issue is not squarely before the Court, this same conclusion would likely apply to any Action Memoranda prepared by the SEC during the course of their investigation.

and "evidence of the defendants' trading activity in a different security than that charged in the indictment . . . during the time of the charged conspiracy." (Gov't Mem. at 4.)

With respect to the defendants' continued relationship, the government intends to introduce evidence that Klein and Schulman "maintained a personal and professional relationship, even after they had knowledge that the SEC and the government had commenced their investigations into the trading of King securities." (Id. at 5.) Specifically, the government "intends to introduce evidence that Schulman continued to use Klein as his investment advisor even after he learned that Klein had traded in King securities in advance of the Pfizer merger" and that, "following the SEC's decision to charge Klein . . ., Schulman and Klein planned a social trip together to Las Vegas." (Id.) The government argues that this is admissible as evidence of the charged conspiracy because it "shows 'the development of a relationship of trust between the participants.'" (Id. at 5 (quoting United States v. Alston, No. 15-cr-435, 2016 WL 5806790, *2 (S.D.N.Y. Sept. 27, 2016)).) Alternatively, the government argues that this is admissible under Rule 404(b) because it concerns uncharged "other acts" that are "relevant to the issues of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." (Id. at 6.)

With respect to the defendants' trading activity in the securities of Enzo Biochemical ("Enzo"), an unrelated entity, the government intends to introduce evidence that "Klein and Schulman traded in securities of Enzo [. . . , that Enzo] was a client of Schulman's" law firm, and that "Schulman worked on matters for Enzo throughout 2010." (Id. at 7.) Although the government does not contend that the Enzo trading constitutes "bad act" evidence, it argues that it is "extremely probative" because, among other things, it demonstrates that Schulman "was acutely aware of the stocks in his portfolio" and "had prior knowledge that Klein traded

securities of a company that Schulman represented" but "did nothing to sever his relationship with Klein after learning of this trading." (Id.)

Schulman does not object to the government's proposed evidence. (Schulman Letter Opp. at 2, ECF No. 38.) Schulman specifies that his acquiescence to the government's proposed evidence relies on the assumption that the government "does not contend that the continuing relationship or the Enzo trading constituted other 'crimes' or 'wrongs,' and that the government will not seek a jury instruction about 'crimes, wrong[s], or other acts.'" (Schulman Letter Opp. at 2)

Schulman also requests "that the Court order the government to disclose" any evidence "that the trading in Enzo did not involve material, non-public information." (Id.) In its reply, the government stated that it is in the process of requesting information concerning Klein's trading in Enzo and, to the extent that the "government obtains the information in advance of trial and seeks to use the Enzo trading activity in any way at trial, it will of course provide the relevant discovery to both defendants." (Gov't Reply at 22, ECF No. 47.) The government also indicates that it disagrees "with Schulman's theory that evidence of a lack of trading on MNPI as to Enzo is exculpatory in any way with respect to evidence of trading on MNPI as to King." (Id.)

Finally, Schulman requests an instruction to the effect "that the government has investigated the trading in Enzo and does not contend that Klein's trading in Enzo was based on MNPI." (Schulman Letter Opp.) In response, the government argued that such an instruction is "not only unnecessary and irrelevant, but misleading." (Gov't Reply at 22.)

The Court finds that the proposed evidence is admissible. Given the Court's ruling that the SEC's complaint and charging decision are inadmissible hearsay, however, the government is precluded from making any reference to the SEC complaint or charging decision. That is, the

government may introduce evidence of the continuing relationship between the defendants after the period of the charged conspiracy, but it may not reference the fact that the SEC filed a complaint and charged Klein but declined to charge Schulman.

With respect to Schulman's request that the government disclose any evidence "that the trading in Enzo did not involve material, non-public information," the Court accepts—for reasons discussed more fully in section II.D, below—the government's representation that it is aware of its disclosure obligations, has fully complied with those obligations to date, and will continue to comply in the future. The Court thus declines to oversee the government's fulfillment of those obligations.

With respect to Schulman's request for an instruction that the Enzo trading was not based on material, non-public information, the Court agrees with the government that such an instruction appears, at this stage, to be unnecessary and potentially misleading. If events at trial warrant such an instruction, however, Schulman may renew his request.

### C. Schulman's Constructive Amendment Argument Fails

Schulman has moved to preclude the government from proceeding at trial on a "gift" theory, under which a tipper can be liable for disclosing material, non-public information to another for a personal benefit when the information is given as a gift. (See Schulman Constr. Am. Mem, ECF No. 34.) Schulman argues that such a theory was neither presented to the grand jury nor contained in the indictment and that to allow such a theory to be presented at trial would constitute a constructive amendment of the indictment. (Id. at 2.) In response, the government argues that the indictment "encompasses the legally available and appropriate theories of 'benefit' in this case, i.e., that the defendant, the tipper in this case, received a pecuniary benefit

from his tip of MNPI, and also received a benefit by providing the MNPI as a gift to a trading friend." (Gov't Opp. at 4.)

Schulman has also requested "that the Court order production of the relevant grand jury transcripts," arguing that he has demonstrated that "a ground may exist for a motion to dismiss the indictment because of a matter that occurred before the grand jury" as required by Federal Rule of Criminal Procedure 6(e)(3)(E)(ii). (Schulman Constr. Am. Mem. at 8–9.) Schulman's only attempt to demonstrate that a "matter that occurred before the grand jury" warrants dismissal is his argument—laid out below—that the elements of liability for insider trading in the Second Circuit have changed since his indictment and that he assumes the grand jury was given specific instructions concerning the governing law at the time of his indictment. In response, the government argues that it had no duty to instruct the grand jury on the precise definition of "benefit" in this case and, further, that Schulman "fails to allege that the grand jury was misled in any way." (Gov't Opp. at 7–8.) The government therefore argues that Schulman has "failed to demonstrate that he is entitled to the disclosure of grand jury materials." (Id. at 8.)

### 1. Constructive Amendment

Constructive amendment occurs when "the trial evidence or the jury charge operates to 'broaden the possible bases for conviction from that which appeared in the indictment'" such that "it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." United States v. Rigas, 490 F.3d 208, 225, 227 (2d Cir. 2007) (quoting United States v. Milstein, 401 F.3d 53, 65 (2d Cir. 2005)); see also United States v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003).

Courts have uniformly held that constructive amendment does not occur "where a generally framed indictment encompasses the specific legal theory or evidence used at trial."

Salmonese, 352 F.3d at 620; see also Milstein, 401 F.3d at 65. Rather, constructive amendment occurs only where the proof presented at trial "modif[ies] essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." United States v. Clemente, 22 F.3d 477, 482 (2d Cir. 1994). The relevant question is whether the indictment put the defendant on notice of the "core of criminality" that the government intended to prove. See, e.g., United States v. Patino, 962 F.2d 263, 266 (2d Cir. 1992).

The two cases on which Schulman relies most heavily in support of his argument are Stirone v. United States, 361 U.S. 212 (1960), and United States v. Milstein, 401 F.3d 53 (2d Cir. 2005). In both cases, the court found that the indictment advanced a specific theory of liability and had been constructively amended because the government presented evidence in support of another, unalleged theory at trial. Had the indictments in Stirone and Milstein been "generally framed" so as to "encompass[] the specific legal theory or evidence used at trial," however, it is likely that the courts would have held that no constructive amendment had occurred. See Salmonese, 352 F.3d at 620; Milstein, 401 F.3d at 65.

The defendant in Stirone was indicted under the Hobbs Act for unlawfully interfering with interstate commerce in connection with a labor dispute at a Pennsylvania concrete mill. Stirone, 361 U.S. at 213. The mill had entered into a contract to supply concrete for the construction of a steel plant—also in Pennsylvania—but the defendant's alleged activities interfered with the completion of that contract. Id. The indictment specifically alleged that interstate commerce had been affected because the concrete mill imported out-of-state sand as a raw material. Id. At trial, however, the court permitted the government "to offer evidence of an effect on interstate commerce not only in sand brought into Pennsylvania . . . but also in

interference with steel shipments from the steel plant in Pennsylvania into Michigan and Kentucky." Id. The Supreme Court found that the admission of such evidence led to the possibility that the defendant "was convicted on a charge the grand jury never made against him" and, therefore, vacated the conviction. Id. at 219.

The defendant in Milstein was indicted for, among other things, distributing misbranded drugs. Milstein, 401 F.3d at 64. The indictment alleged that the defendant sold counterfeit drugs that "had been repackaged using forged materials" that falsely represented the drugs as "the original product from the licensed manufacturers." Id. At trial, however, the government presented evidence that the drugs were misbranded because they were labeled "sterile" when, in reality, they were contaminated "with bacteria and endotoxins." Id. This theory of misbranding was not included in the indictment, and the Second Circuit held that the defendant's conviction under such a theory constituted a constructive amendment. Id. at 65.

### 2. Schulman's Argument for Constructive Amendment

Schulman's constructive amendment argument is based on the recent evolution of insider trading liability in the Second Circuit. Under the long-standing Supreme Court decision in Dirks v. S.E.C., an insider who misappropriates material non-public information can be liable for insider trading even if he does not, himself, trade on the information where he discloses the information to an outsider "for the same improper purpose of exploiting the information for [his] personal gain." 463 U.S. 646, 659 (1983).

The Second Circuit had explained that "[p]ersonal benefit is broadly defined to include not only pecuniary gain, but also, inter alia, any reputational benefit that will translate into future earnings and the benefit one would obtain from simply making a gift of confidential information to a trading relative or friend." United States v. Jiau, 734 F.3d 147, 153 (2d Cir. 2013). In 2014,

however, the Second Circuit decided <u>United States v. Newman</u> and apparently narrowed the definition of "personal benefit," stating that "where a personal benefit may be inferred from a personal relationship between the tipper and the tippee . . . such an inference is impermissible in the absence of proof of a meaningfully close personal relationship that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature."  773 F.3d 438, 452 (2d Cir. 2014).

When Klein and Schulman were indicted, <u>Newman</u> was the governing law in the Second Circuit.  In December 2016, however, the Supreme Court decided <u>Salman v. United States</u>, holding that, to "the extent the Second Circuit [in <u>Newman</u>] held that the tipper must also receive something of a 'pecuniary or similarly valuable nature' in exchange for a gift to family or friends," that rule was inconsistent with <u>Dirks</u> and was overturned.  137 S.Ct. 420 (2016).

Schulman argues that "controlling Second Circuit precedent" at the time of his indictment "required that, as a tipper, Schulman had to provide material, non-public information with the intent to benefit himself financially."  (Schulman Constr. Am. Mem 8.)  Schulman "assum[es] that the government instructed the grand jury correctly"—meaning, apparently, that the government provided instruction concerning the legal definition of "personal benefit"—and argues that, under this assumption, the "grand jurors never had the opportunity to consider whether Schulman acted with the intent to provide a gift to Klein with the intent that Klein trade in King stock."  (<u>Id.</u>)  Schulman also argues that "the indictment did not allege a gift theory." (<u>Id.</u>)

### 3. The Indictment Alleges a General Theory and Would Not Be Constructively Amended Were the Government to Proceed on a "Gift" Theory

Schulman's argument is unavailing.  Although the indictment does not specifically allege a "gift" theory, it also does not specifically allege that Schulman provided the information to

Klein in exchange for a pecuniary benefit. Rather, the indictment sets out a series of allegations describing Schulman's relationship with Klein, the manner in which he obtained the material non-public information, his disclosure of that information to Klein, and Klein's subsequent trading activities. (See Indictment ¶¶ 10–22.) As the government argues, the "core theory" of the indictment "remains the same irrespective of the benefit that the defendant received, i.e., the defendant breached a duty not to disclose information in order to receive a benefit." (Gov't Opp. at 5.)

This is a situation in which a "generally framed indictment encompasses the specific legal theory"—or, possibly, theories—that the government intends to advance at trial. Salmonese, 352 F.3d at 620. Nothing in the indictment indicates that Schulman was indicted *solely* under a theory of pecuniary benefit. Stirone and Milstein—the two cases upon which Schulman relies—are distinguishable because both concerned situations where the government indicted the defendant under a specific legal theory but advanced another theory at trial. See Stirone, 361 U.S. at 215; Milstein, 401 F.3d at 57.

As such, there is no doubt here that the indictment put the defendants on notice of the "core of criminality" that the government intended to prove at trial. See Patino, 962 F.2d at 266. Were the government to proceed under a "gift theory" at trial, this would neither "broaden the possible bases for conviction from that which appeared in the indictment" nor lead to any "uncertain[ty] whether the defendant was convicted of conduct that was the subject of the grand jury's indictment" because the indictment alleged a general theory of personal benefit. Rigas, 490 F.3d at 225, 227. Schulman's concerns about the possibility of a constructive amendment are misplaced, and his motion to preclude the introduction of evidence in support of a "gift theory" is denied.

### 4. Schulman Makes No Allegations Warranting Disclosure of Grand Jury Transcripts

Schulman also requests disclosure of grand jury minutes. In order to justify such disclosure, a defendant must make "specific factual allegations of government misconduct." United States v. Torres, 901 F.2d 205, 233 (2d Cir. 1990). Schulman has made no such allegations. Instead, Schulman requests the disclosure of the grand jury minutes based on his assumption that the government instructed the grand jury about the theories of liability set out by Newman.

Schulman provides no factual or legal support for his assumption. Indeed, the prosecution is not required to instruct the grand jury on the legal theory under which an indictment is sought, beyond simply reading or providing the relevant statute. See, e.g., United States v. Finnerty, No. 05-cr-397, 2006 WL 2802042, at *9 (S.D.N.Y. Oct. 2, 2006) (noting that "prosecutors are generally not required to provide legal instructions to the grand jury") (collecting cases); United States v. Monzon-Luna, No. 11-cr-722, 2014 WL 223100, at *1 (E.D.N.Y. Jan. 21, 2014) (same).

Even setting aside the fact that Schulman has provided no support for his assumption that the grand jury was instructed that "personal benefit" means "pecuniary benefit," it is not clear that such an instruction would warrant dismissal of the charges insofar as they are premised upon a "gift theory." Schulman seems to argue that the instructions he assumes were given to the grand jury somehow act to transform the indictment from one presenting a general theory of insider trading liability to one presenting a specific theory to the exclusion of all others. The mechanism by which he argues that this transformation occurred is unclear, and Schulman provides no legal support for his position. Nor could he; it is well established that an indictment, "if valid on its face, is enough to call for trial of the charge on the merits." Costello v. United

States, 350 U.S. 359, 363 (1956); Lawn v. United States, 355 U.S. 339, 349 (1958); see also United States v. Contreras, 776 F.2d 51, 54 (2d Cir. 1985) (finding that an "indictment is sufficient to try a defendant on the counts charged therein, and satisfies the requirements of the fifth amendment" and recognizing that, if "indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed") (quoting Costello, 350 U.S. at 363).

Schulman has thus failed to satisfy the requirements for the disclosure of grand jury minutes and his request for disclosure is denied.

### D. The Court Will Not Supervise the Government's Continued Compliance with its Disclosure Obligations

Schulman has moved to "have the court supervise 'timely disclosure' of Rule 3.8 and Brady material." (Schulman Disclosure Mem. at 1, ECF No. 35.) Schulman sets out a number of specific requests that it has made to the government. Broadly speaking, these requests fall into two categories: requests for prior statements by Shechtman and requests for information that would either tend to render immaterial the information concerning King's acquisition or would negate Schulman's possession of such information.

In response, the government has represented—both in its papers and orally—that it "is aware of, and will continue to comply with, all of its disclosure obligations" and that it "has carefully considered its Brady disclosure obligations and determined that it does not currently have Brady material to disclose." (Gov't Opp. at 9–10.) With respect to Schulman's request for statements made by Shechtman, the government has affirmed that it has complied with its Brady obligations and will comply with its obligations under the Jencks Act at the appropriate time. (Id. at 11.) The government correctly notes that it has no obligations under the Jencks Act at this point. (Id.) With respect to Schulman's request for information concerning both whether the

information allegedly relayed to Klein was material and whether Schulman actually had knowledge of that information, the government has represented that it possesses no such information. (<u>Id.</u> at 11–12.) The government further argues that any such information, if it existed, would be "equally available to the defendant" as to the government. (<u>Id.</u>)

For the sake of this discussion, the Court sets out three standards implicated by Schulman's motion. First, pursuant to <u>Brady</u>, the government has a "constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." <u>United States v. Coppa</u>, 267 F.3d 132, 135 (2d Cir. 2001) (citing <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)). This duty requires that disclosure of such information occur "in time for its effective use" by the defendant. <u>Id.</u> at 144. Second, pursuant to 18 U.S.C. § 3500— the Jencks Act—the government is obligated to "produce any statement" by a witness in a criminal trial after that witness has testified on direct examination.

Third, pursuant to Rule 3.8 of the American Bar Association's Model Rules of Professional Conduct, the "prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that tends to negate the guilt of the accused or mitigates the offense." The Supreme Court has recognized that the standard imposed on prosecutors by Rule 3.8 is more demanding than that established by <u>Brady</u>. <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995). And, as Schulman rightly notes, "federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar." (Schulman Brady Reply at 2 (quoting <u>United States v. Hammad</u>, 858 F.2d 834, 837 (2d Cir. 1988)); <u>see</u> <u>also</u> <u>In Re Snyder</u>, 472 U.S. 634, 645 n.6 (1985).) Unlike the duties set out under <u>Brady</u> and its progeny, however, Rule 3.8 does not constitute a constitutional

guarantee, and district courts enforcing the rules of professional conduct do so at their own discretion.  See Hammad, 858 F.2d at 842.

Where, as here, the government "has made good faith representations to the court and to the defense counsel that it recognizes its disclosure obligations under Brady, and that it has complied with said obligations and will continue to do so in a timely manner," courts in the Second Circuit "repeatedly have denied pre-trial requests for discovery orders."  United States v. Shkreli, No. 15-cr-637 (E.D.N.Y. Dec. 14, 2016) (ECF No. 138, *6–*7) (collecting cases); see also United States v. Mohamed, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) ("Courts in the Second Circuit generally do not compel immediate disclosure of Brady/Giglio materials where (1) the Government represents it is aware of and will comply with its Brady/Giglio obligations, and (2) the Defense does not provide any reason for suspecting the Government will not comply.")

Schulman's request for the Court to oversee the disclosure of the requested documents is, therefore, denied.  The Court is satisfied with the government's representation that it has met, and will continue to meet, all applicable disclosure obligations.

## III.     CONCLUSION

For the reasons set out above, the Court (1) grants the government's motion to preclude the admission of evidence concerning the SEC complaint and charging decision; (2) grants the government's request to introduce evidence concerning the relationship between the defendants, insofar as such evidence includes no mention of the SEC complaint or charging decision; (3) denies Schulman's motion to preclude a "gift" theory; and (4) denies Schulman's motion for the Court to supervise the disclosure of <u>Brady</u> and Rule 3.8 materials.

A conference before the Court is hereby scheduled for February 21, 2017, at 1:00 PM in courtroom 6E of the Brooklyn courthouse.  On or before February 17, 2017, the parties shall file proposed voir dire and jury instructions via ECF.

**SO ORDERED.**

Date: February 10, 2017
Central Islip, New York

_____/s/ (JMA)_____
Joan M. Azrack
United States District Judge